

IN THE
TENTH COURT OF APPEALS

No. 10-14-00217-CR

HOBART T. RICHARDSON, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2013-949-C2

# OPINION

Hobart Richardson, Jr. pled guilty to, and was convicted of, one count of possession of cocaine and one count of possession of heroin, both within a drug free zone, after his motion to suppress the evidence was denied. *See* Tex. Health & Safety Code Ann. §§ 481.115; 481.134 (West 2010). He was sentenced to five years in prison for the possession of cocaine offense and 12 months in a state jail facility for the possession of heroin offense. The sentences were ordered to run concurrently. Because the trial court erred in denying Richardson's motion to suppress, the trial court's judgment is

reversed and this case is remanded for further proceedings.

**BACKGROUND**

Richardson was stopped in his pickup for a traffic violation. The stop occurred as he pulled into his driveway. Ultimately, officers detained Richardson until a drug dog could be brought to the scene and sniff around the exterior of Richardson's pickup. After the dog alerted to Richardson's keys and the driver's side door of the pickup, officers discovered cocaine and heroin inside the pickup. Before trial, Richardson moved to suppress the admission of the drugs. After a hearing, the trial court denied Richardson's motion; and Richardson pled guilty to the offenses.

**MOTION TO SUPPRESS**

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). But when

application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, such as the determination of reasonable suspicion, we review the trial court's ruling on those questions de novo. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). If the trial court makes findings of fact, as it did here, we determine whether the evidence supports those findings. *Robinson*, 334 S.W.3d at 778. We then review the trial court's legal rulings de novo unless the findings are dispositive. *Id*.

Richardson does not contend the initial traffic stop was unreasonable. Rather, he contends the continued detention was unreasonable because the officers did not have reasonable suspicion to continue the detention; thus, his argument continues, the drugs found in his pickup should have been suppressed.

*Traffic Stop*

In an investigatory stop, the totality of the circumstances -- the whole picture -- must be taken into account. *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000). A detention based on reasonable suspicion must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim.

App. 2007). Otherwise stated, those specific, articulable facts must show unusual activity, some evidence that connects the detained individual to the unusual activity, and some indication that the unusual activity is related to crime. *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). Circumstances that an officer relies on "must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013) (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)).

On a routine traffic stop, police officers may request certain information from a driver, such as a driver's license and car registration, and may conduct a computer check on that information. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). It is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved. *Id*. at 63-64. It is at this point that, unless there is another proper basis for the investigatory detention, the detention must end and the driver must be permitted to leave. *Id*. at 64; *see Rodriguez v. United States*, ___ U.S. ___; 135 S. Ct. 1609, ___; 191 L. Ed. 2d 492, 496 (2015) ("a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.").

*Continued Detention*

Any detention beyond this point in time, however, must be supported by reasonable suspicion that occurred before the purpose for the original stop ended. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) (no reasonable suspicion for continued detention when based only on officer's conclusion during initial detention that appellant did not appear to be someone on a business trip). *Accord Madden v. State*, 242 S.W.3d 504, 516-517 (Tex. Crim. App. 2007) (facts from prior to and obtained during stop provided sufficient reasonable suspicion for continued detention).

*Evidence*

At the hearing on Richardson's motion to suppress, Officer McKinney testified that he and another officer were conducting surveillance of a local "smoke house" for drug activity. McKinney belonged to the Street Crimes Unit which knew the area was associated with illegal narcotics. While watching the smoke shop, McKinney approached Darwin DeGrate, a person who was loitering, to give him a trespass warning. After issuing the warning, McKinney talked further with DeGrate who said that narcotics were sold at the smoke shop and at the Dollar Store down the street.

Around 10:00 p.m., Richardson drove into the smoke shop's parking lot, where he was approached by a known prostitute. Richardson never opened the door or got out of his pickup. The prostitute stood at the passenger side of Richardson's pickup for about a minute and then left. Richardson pulled out of the parking lot after the

prostitute left.   McKinney believed Richardson was attempting to "pick up" the prostitute or had a hand-to-hand narcotic transaction with the prostitute.   McKinney did not see, however, an actual hand-to-hand delivery of anything.   McKinney decided, based on his training and experience that illegal narcotics and prostitution were prevalent in the area, to follow and then detain Richardson.

Richardson was ultimately stopped by police in Richardson's driveway.   He was told he was stopped for failing to stop at a designated point in the intersection.   A video of the traffic stop showed that at approximately two minutes into the stop, an officer, presumably McKinney, called in Richardson's driver's license information.   Richardson had no outstanding warrants.   The officer then asked Richardson about whether he had any past drug charges.   Richardson replied that he did not.   Richardson was then moved from his vehicle to his front porch.   Shortly thereafter, Richardson was told he was not going to be issued a citation for the traffic violation.   This is the point when the traffic stop investigation was fully resolved, and Richardson should have been allowed to leave.   *See Rodriguez v. United States*, ___ U.S. ___; 135 S. Ct. 1609, ___; 191 L. Ed. 2d 492, 496 (2015); *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004). Nevertheless, Richardson continued to be detained for at least an additional 13 minutes until a drug dog arrived which then alerted to Richardson's keys and the driver's side door of Richardson's pickup.   McKinney testified that Richardson provided inconsistent information about where he had been prior to being stopped by police and became very

upset and belligerent when McKinney asked for consent to search. The video of the stop confirms that these actions by Richardson occurred after the resolution of the traffic stop investigation.

*Application*

Although the trial court concluded that the officers developed reasonable suspicion to believe that Richardson was involved in criminal activity, based on this record, we do not believe McKinney had reasonable suspicion to continue Richardson's detention. Reasonable suspicion is dependent not only on the content of the information possessed by law enforcement, but also on its reliability. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). Although DeGrate confirmed that a house in the area sold illegal narcotics, information that McKinney already knew, nothing else was presented to show that DeGrate was a reliable source regarding the sale of drugs at the smoke shop. DeGrate was a convicted drug offender. McKinney did not know DeGrate prior to that evening and would not vouch for him. *See Ala. v. White*, 496 U.S. 325, 330; 10 S. Ct. 2412; 110 L. Ed. 2d 301 (1990) ("if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of [reasonable] suspicion than would be required if the tip were more reliable."). Further, unlike the cases relied on by the State, *State v. 1998 Toyota Land Cruiser*, 277 S.W.3d 88, 91 (Tex. App.—Amarillo 2009, no pet.) and *Torrence v. State*, No. 02-10-00027-CR, 2011 Tex. App. LEXIS 4822, *17 (Tex. App.—Fort Worth June 23, 2011, no pet.) (not

designated for publication), where affirmative actions between two people in a vehicle were seen by the respective officers, McKinney never saw a hand-to-hand delivery or any contact between Richardson and the alleged prostitute. Without seeing anything transpire, McKinney only had a hunch that an illegal drug deal had occurred. We concede that it appears the hunch may have been confirmed later, but there is actually nothing more to elevate the hunch to reasonable suspicion. Once the basis for the traffic stop was resolved, the officer had no other basis for the detention.

The State contends that Richardson's actions of lying to McKinney about where Richardson had been coming from when he was stopped, refusing consent to search, and then being belligerent and agitated gave McKinney reasonable suspicion to continue to detain Richardson. However, those actions of Richardson occurred after the purpose for the traffic stop had concluded and cannot provide a justification to establish reasonable suspicion to continue the detention. *See Rodriguez v. United States*, ___ U.S. ___; 135 S. Ct. 1609, ___; 191 L. Ed. 2d 492, 496 (2015); *Kothe v. State*, 152 S.W.3d 54, 63-64 (Tex. Crim. App. 2004). *See also St. George v. State*, 237 S.W.3d 720, 726 (Tex. Crim. App. 2007) (no reasonable suspicion to continue detention when deputies did not learn passenger misidentified himself until after driver was issued a warning citation).

**CONCLUSION**

Based on the totality of the circumstances, Officer McKinney did not have reasonable suspicion to continue Richardson's detention after the purpose for the traffic

stop was concluded. Accordingly, the continued detention was unreasonable, and the trial court erred in denying Richardson's motion to suppress. We reverse the trial court's judgment and remand this case to the trial court for further proceedings.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and remanded
Opinion delivered and filed July 9, 2015
Publish
[CR25]

