BENHAM, Justice,
dissenting.
I write because I respectfully disagree with the majority opinion. In this case, it is clear that the officer had effectively completed his traffic investigation prior to deploying his drug dog and, as such, his search of the vehicle was unlawful.
A seizure justified only by a police-observed traffic violation ‘become [s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission” of issuing a ticket for the violation. Rodriguez v. United States, _U. S.__(II) (135 SCt 1609, 191 LE2d 492) (2015). The United States Supreme Court has noted that the incidental inquiries accompanying a traffic stop include checking *17 the driver’s license, any outstanding warrants against the driver, the vehicle’s registration, and the insurance on the vehicle. See id. See also Delaware v. Prouse, 440 U. S. 648, 658-660 (99 SCt 1391, 59 LE2d 660) (1979); 4 W. LaFave, Search and Seizure § 9.3 (c), pp. 507-517 (5th ed. 2012). It is undisputed that within ten minutes of the stop, the officer confirmed that Scott, who was the driver, was not intoxicated, decided to issue a written warning ticket to Scott, finished writing the warning ticket, and received confirmation that Scott had a valid license to operate the vehicle and was not subject to any warrants. While Allen’s warrant status was unknown at this point, Allen was a passenger and never purported to have a driver’s license and was not operating the vehicle when the violation occurred, and so his status was not critical to the mission of road safety. In fact, the majority opinion concedes that the United States Supreme Court has never affirmatively held that a passenger’s status is a required inquiry in any traffic investigation or that such inquiry may prolong the stop after the mission of the traffic stop has been resolved. The case law, rather, suggests that inquiries of passengers are permissible depending on the circumstances surrounding the stop. See, e.g., Arizona v. Johnson, 555 U. S. 323, 333 (II) (B) (129 SCt 781, 172 LE2d 694) (2009) (pat-down of back seat passenger not unlawful where officer had reason to believe passenger was affiliated with a gang). Indeed, the Supreme Court has stated that “the Fourth Amendment tolerate [s] certain unrelated investigations” only if they do not “lengthen the roadside detention.” Rodriguez, supra, 135 SCt at 1614 (II).
Here, the majority concedes that
the records check on Allen was not related to determining whether to issue a traffic ticket to the driver of the car (Scott); nor is there evidence the officer believed that Allen had committed a traffic violation himself; nor was the check needed to ensure roadway safety, since this was not a situation where the passenger would be driving away from the stop.
Despite this concession, the majority opinion justifies the officer’s actions in prolonging the stop as to Allen’s identification card, and the deployment of the drug dog while waiting for Allen’s information to be returned by the dispatcher, by focusing on case law which highlights the need to support officer safety when conducting traffic investigations.
There is no doubt that officers have difficult jobs and that conducting traffic stops can be dangerous. Officer safety, however, is not a panacea for Fourth Amendment violations. And in this case in *18 particular, the focus on officer safety is irrelevant due to the absence of any evidence that officer safety was ever a concern during this incident. No subjective or objective evidence concerning officer safety was presented at the motion to suppress hearing. The videotape of the encounter shows that the officer conducted a pat-down of Scott when he exited the vehicle and determined that Scott was unarmed. This was about four minutes into the stop. On the videotape, you can hear Allen say he has no weapons when the officer asks him to exit the vehicle about ten minutes into the stop.[12] The video shows that both men, having exited the vehicle, stood by the police car, unrestrained and without incident as the officer then deployed his drug dog. and searched the vehicle.
Thus, the officer had taken steps to resolve the traffic investigation and any immediate officer safety concerns the two men might pose prior to deploying his drug dog. Amy information that could have been revealed from the check of Allen’s out-of-state identification card, which was not a driver’s license, was unrelated to any legitimate concern the officer had about road safety, resolving the traffic infraction, or his own immediate safety. Rather, the officer used the inquiry into Allen’s information as an excuse to extend the detention beyond the reasonable time it took the officer to investigate the traffic stop and impermissibly detoured his mission into an investigation of criminal activity for which he had no reasonable suspicion or probable cause.[13] So-called “safety precautions,” such as irrelevant passenger checks, cannot be used to facilitate a detour from the traffic mission into an unlawful investigation as the stop may “last no longer than is necessary to effectuate [resolution of the traffic infraction]. (Citation and punctuation omitted.) Rodriguez, supra, 135 SCt at 1614 (II). See also United States v. Hight, 127 FSupp.3d 1126 (D. Colo. 2015) (Regardless of officer-safety motivations, traffic stop was unlawful when the stop was measurably extended by officer’s decision to wait for additional officers whose presence was designed to facilitate an investigation of defendant for possible drug crime, not to facilitate handling the traffic infraction for which the defendant was stopped.); United States v. Evans, 786 F3d 779, 787 (9th Cir. 2015) (Officer safety was not advanced by ex-felon registration check, which took eight minutes, during traffic stop; prolonging stop to conduct ex-felon *19 check and dog sniff was unrelated to traffic mission and violated Fourth Amendment.).
Furthermore, the United States Supreme Court has held that a drug sniffing dog has no purpose in an investigation concerning traffic violations. Rodriguez, supra, 135 SCt at 1615 (II) (“Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer’s traffic mission.”). See also State v. Miller, 267 Or. App. 382, 392 (340 P3d 740) (2014) (reasonable suspicion that defendant was driving under the influence did not support deployment of drug dog which detects the presence of drugs, not whether a person is intoxicated). Likewise, the detection of criminal drug trafficking is unrelated to officer safety. Rodriguez, supra, 135 SCt at 1616 (II) (“Highway and officer safety are interests different in kind from the Government’s endeavor to detect crime in general or drug trafficking in particular.”) Prolonging the time it reasonably takes to complete a traffic stop in order to conduct an open air sniff by a drug dog is unlawful without exception. Rodriguez, supra. See also Florida v. Royer, 460 U. S. 491, 498 (103 SCt 1319, 75 LE2d 229) (1983) (it is unlawful for police to detain a person “even momentarily without reasonable, objective grounds for doing so”); Richardson v. State, __ SW3d _, 2015 WL 4381333 (Tex. App. July 9, 2015) (officer was not permitted to detain the defendant beyond completion of traffic stop to conduct a drug investigation. Traffic stop was complete when officer said he would not be issuing traffic citation); People v. Pulling, 34 NE3d 1198 (Ill. App. 2015) (motion to suppress upheld where officer stopped writing traffic citation in order to conduct free air dog sniff). Compare Illinois v. Caballes, 543 U. S. 405, 407 (125 SCt 834, 160 LE2d 842) (2005) (dog sniff took place simultaneously as the warning was being written and was therefore completed at the same time as the traffic investigation, all within ten minutes).
In sum, the concern over an officer safety check flows from the mission of the traffic stop itself, and the mission is the determination of whether a traffic infraction has been committed. Therefore, the detention must last no longer than necessary to make the determination of whether a traffic violation has occurred, and authority for the detention ends when tasks tied to the traffic infraction reasonably should have been completed. Once the determination of whether a traffic infraction occurred has been completed, the mission is over, the detainees should be immediately released, and the need for safety checks expires concurrently. Checking for safety after the traffic mission has been completed (i.e., by inquiring about the passenger’s identity) does nothing to further the goal of ensuring safety during *20 the mission; instead, it unreasonably prolongs the stop.
Decided November 2, 2015.
328 Ga. App. 411.
James L. Wright III, District Attorney, Blair D. Mahaffey, Assistant District Attorney, for appellant.
Veal & Lamar, Holly W. Veal; William C. Puckett, Jr., for appel-lees.
An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But... he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. . . .
Beyond determining whether to issue a traffic ticket, an officer’s mission includes “ordinary inquiries incident to [the traffic] stop.” [Caballes, supra, 543 U. S. at 408.] Typically such inquiries involve checking the driver’s license, determining whether there are outstanding warrants against the driver, and inspecting the automobile’s registration and proof of insurance.
(Citations omitted; emphasis supplied.) Rodriguez, supra, 135 SCt at 1615 (II). Nothing in Rodriguez supports prolonging a traffic stop to inquire into irrelevant passenger information.[14]
Because I believe the officer unlawfully extended the traffic stop in this case, I would uphold the decision of the Court of Appeals affirming the trial court’s granting the motions to suppress. Accordingly, I respectfully dissent to the majority opinion.
I am authorized to state that Justice Hunstein and Justice Melton join in this dissent.

 It cannot be seen on the videotape whether the officer conducted a pat-down of Allen for weapons when he exited the vehicle.

 Seemingly, the officer was determined to conduct a drug investigation because he only deployed his drug dog when Scott failed to consent to a search of the vehicle ten minutes into the stop. Up until that point, Scott was standing unrestrained by the police car, Allen was sitting in the stopped vehicle, and the officer had no objective evidence of any criminal activity.

 In fact, the Supreme Court has noted that a passenger has a stronger liberty interest than the driver when it comes to a traffic stop investigation. See Maryland v. Wilson, 519 U. S. 408, 413-414 (117 SCt 882, 137 LE2d 41) (1997).