

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00053-CR

**CLAYTON RAY MOCKABEE,**

                                          **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                          **Appellee**

---

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. DC-F202000507

---

## MEMORANDUM OPINION

---

A jury convicted Clayton Ray Mockabee of the felony offense of evading arrest or detention in a vehicle which the jury found to be a deadly weapon. *See* TEX. PENAL CODE § 38.04(a), (b)(2)(A). Punishment was assessed at 12 years in prison. Because the evidence is sufficient to support the verdict, and because the trial court did not violate Mockabee's Sixth Amendment right to counsel, the trial court's judgment is affirmed.

**BACKGROUND**

A Johnson County Sheriff's deputy attempted to stop a vehicle Mockabee was driving because the rear, paper license tag was not legible from a distance of 50 feet.

When the deputy activated his emergency lights, Mockabee slowed down, as if to stop, but instead, sped off.

Mockabee knew he was supposed to stop when the deputy activated the emergency lights, but Mockabee did not stop. After many miles at high speeds and after running over spikes thrown out by deputies and local police, which slowed Mockabee's vehicle considerably, the vehicle finally came to a stop in a ditch by a gas station, and Mockabee was arrested.

### SUFFICIENCY OF THE EVIDENCE

Mockabee's first two issues concern the sufficiency of the evidence to support the verdict while his third issue concerns the sufficiency of the evidence to support the deadly weapon finding made by the jury. Specifically, Mockabee contends the evidence was insufficient to prove a lawful attempt to detain Mockabee, that Mockabee intentionally fled from the attempted detention, or that others were placed in actual danger.

### *Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not

engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

### *Validity of Traffic Stop*

Police officers may stop and detain a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Rush v. State*, 549 S.W.3d 755, 758 (Tex. App.—Waco 2017, no pet.). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to

reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Richardson v. State*, 494 S.W.3d 302, 304 (Tex. App.—Waco 2015, no pet.).

Late at night, a Johnson County Sheriff's deputy, in a marked Sheriff's vehicle, passed a white vehicle which did not appear to have a front bumper[1] and did not have a front license plate. It was later determined that Mockabee was driving this vehicle. When the deputy turned around and caught up to the vehicle, he noticed a paper tag on the back bumper and knew that if a paper tag was displayed, only one such tag was required. As the deputy drew closer to the vehicle, he noticed that, although one light illuminated the tag, the tag number was not legible at 50 feet as required by statute. He turned off his own headlights to verify that the tag number was illegible. After this verification, the deputy activated his emergency lights in an attempt to stop the vehicle.

Under the Texas Transportation Code, a vehicle must be equipped with a tail lamp or separate lamp constructed and mounted to emit a white light that illuminates the rear license plate and makes the plate clearly legible at a distance of 50 feet from the rear. TEX. TRANSP. CODE § 547.322(a), (b), (f). In this case, the vehicle had a license plate light that emitted a white light. However, the deputy determined that the paper tag was not legible from 50 feet away. Further, the deputy's dash-cam video and still photographs taken from the video, both introduced into evidence, did not show a legible tag.

Mockabee contends it was not his responsibility to ensure the legibility of the

---

[1] Ultimately, it was determined that the vehicle had a front bumper, but it was black while the vehicle was white.

tag, but rather, it was the dealer's responsibility. He cites to section 503.063(c)(2) of the Texas Transportation Code in support of this theory. Mockabee is correct that a dealer who issues a temporary buyer's tag to a person who buys a vehicle is responsible for displaying the tag. TEX. TRANSP. CODE § 503.063(a), (c)(2). However, there is nothing in this section of the Code that requires the dealer to ensure that a rear license plate light illuminates and makes the tag legible at a distance of 50 feet. Moreover, there was evidence that the tag on the vehicle was not assigned to that vehicle and the vehicle was stolen, thus undermining the argument that the responsibility to ensure the legibility of the tag was, and would properly remain, on the dealer who sold the vehicle.

Accordingly, viewing the evidence under the appropriate standards and applicable law, the evidence was sufficient to prove a lawful attempt to detain Mockabee for failure to properly illuminate a license plate. Mockabee's second issue is overruled.

*Fleeing*

A person commits the felony offense of evading arrest or detention if the person intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE § 38.04(a),(b)(2)(A). In the context of evading with a motor vehicle, fleeing has been held to be anything less than prompt compliance with an officer's direction to stop. *Rush v. State*, 549 S.W.3d 755, 759 (Tex. App.—Waco 2017, no pet.).

Here, as soon as the deputy's emergency lights came on, the vehicle slowed down like a normal traffic stop, and the deputy could see the passenger door start to

open. The deputy requested another unit because he thought the passenger in the vehicle was about to jump out and run. But the vehicle did not stop. The door closed, and the vehicle accelerated to a high rate of speed. About a mile down the road, the vehicle came to a complete stop, and the passenger jumped out. The vehicle then sped off, and its lights were turned off. As the deputy gave chase, other deputies joined in and, in town, deployed spikes several times to try to stop the vehicle. The vehicle ran over the spikes two or three times but did not stop. While the speed of the vehicle exceeded 100 miles per hour at the beginning of the chase, it decreased speed to about 70 miles per hour, at times, when driving through town. And after running over the spikes, the speed decreased to about 17 miles per hour. But the vehicle still did not stop. Ultimately, the vehicle rolled slowly to a stop in a grassy area by a large gas station off the access road to Interstate 35. Mockabee exited the vehicle through its driver's side window and was ordered to lay, face down, in the grass where he was then arrested.

Mockabee knew the general rule that a person should stop when a police officer's emergency lights are activated. He also knew what was going on when the deputy's emergency lights were activated that night. He admitted that he did not stop. He contends, however, that he did not "intentionally" flee because he feared for his safety and his family's safety. According to Mockabee, the passenger in the vehicle "freaked out" when the deputy's emergency lights came on and started throwing things out of the vehicle while yelling at Mockabee to "go, go, go." Mockabee said the items thrown out included a gun. The gun, coupled with the passenger yelling at him, scared him. Mockabee testified that the passenger then held a knife to Mockabee's

temple. Once the passenger got out of the vehicle, Mockabee said he remained scared for himself and his family because the passenger knew where Mockabee's family lived.

It is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). The jury could have disbelieved Mockabee's explanation as to why he did not stop. This is especially so given Mockabee's two prior felony convictions and an outstanding parole warrant at the time of the offense, the vehicle was reported stolen and the paper tag was not assigned to that vehicle, and the impeachment of Mockabee's testimony that he had blood dripping down his face when he emerged from the vehicle as a result of the passenger holding a knife to Mockabee's head.

Accordingly, viewing the evidence under the appropriate standards and applicable law, the evidence was sufficient to prove Mockabee intentionally fled from the attempted detention. Mockabee's first issue is overruled.

*Deadly Weapon*

To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and (3) that other people were put in actual danger. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). Mockabee does not dispute that the evidence was sufficient to support the first two elements. Rather, he contends the evidence is insufficient to show that other people were put in actual danger. A

deadly-weapon finding is justified if a rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 254, 256-57 (Tex. Crim. App. 2009).

The chase began on country roads where very few vehicles were travelling. However, the chase proceeded through urban areas where the traffic increased to a few more vehicles. Mockabee drove through multiple traffic signals at approximately 90-100 miles per hour. One deputy's dash-cam video showed Mockabee travelling rapidly around another vehicle on the roadway. The deputy agreed with the prosecutor that Mockabee was "close to hitting" that vehicle. Also, at one point, Mockabee drove on the shoulder of the roadway toward another deputy who had placed spikes on the road to deflate the tires and slow down the vehicle. That deputy thought the vehicle would hit him, but saw that it swerved back into its lane "pretty early." Further, after running over one set of spikes with his front left tire which started to slow down his speed, and while trying to avoid yet another set of spikes, Mockabee hit the concrete center median separating his lane of traffic from the opposing lanes of traffic, where other vehicles were traveling, and bounced back into his own lane. One of the deputies chasing Mockabee believed that had the median not been there, Mockabee would have likely hit one of those other vehicles. The deputy was also concerned overall for the safety of the other drivers, Mockabee, himself, and the other deputies on the road. He believed that if the vehicle had hit someone in the manner in which it was being operated, it was likely to have caused injury to that person.

While the danger posed to motorists must be actual, and not simply

hypothetical, the statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require a defendant to intentionally strike another vehicle to justify a deadly weapon finding. *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). A deadly weapon finding is appropriate on a showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner. *Id*.

Accordingly, viewing the evidence under the appropriate standards and applicable law, the record supports a conclusion that a rational trier of fact could have found beyond a reasonable doubt that Mockabee used the vehicle as a deadly weapon. We overrule Mockabee's third issue.

**RIGHT TO COUNSEL**

In his fourth issue, Mockabee complains his Sixth Amendment right to counsel was violated because he did not have assistance of counsel between November 2, 2021 and November 9, 2021. Specifically, he contends he did not have counsel to advise him when a plea offer from the State was made and withdrawn and he had not waived his right to representation.

Under the Sixth Amendment to the United States Constitution, criminal defendants have a right to the assistance of counsel for their defense. U.S. CONST. amend. VI. This right extends to all critical stages of the criminal proceeding, not just the actual trial. *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014). But not every event following the inception of adversary judicial proceedings constitutes a critical stage so as to invoke the right to counsel under the Sixth Amendment. *Id*.

(quotations omitted). A proceeding is a critical stage if the absence of counsel may result in rights being irretrievably lost if not then and there asserted, or if the accused requires aid in coping with legal problems or assistance in meeting his adversary. *Villafranco v. State*, 654 S.W.3d 753, 759 (Tex. Crim. App. 2021).

The record reflects that Mockabee's attorney requested to withdraw as counsel due to a conflict during a pretrial hearing approximately a month before trial. In response to counsel's request, the State informed the trial court that it was trying the case in December and that it was withdrawing the plea bargain offer. After the offer was withdrawn, the trial court asked an attorney in the court room, who was ultimately appointed as Mockabee's counsel a week later, to check for conflicts to representation. The trial court then allowed Mockabee's previously appointed counsel to withdraw.

By the date of the hearing, Mockabee had been represented by several different attorneys and was represented by counsel when the plea bargain offer of 8 years in prison was made. He was still represented by counsel, albeit by a different attorney, when the offer was withdrawn. Mockabee admitted at a later hearing that he had conferred with a prior attorney about the offer. The record does not reflect that anything occurred during the time after his attorney was allowed to withdraw and his new attorney appointed one week later that required aid in coping with legal problems or assistance in meeting his adversary.

Notwithstanding the offer was withdrawn while Mockabee still had counsel, a defendant has no right to demand the State to offer to enter into a plea bargain agreement. *Thompson v. State*, 691 S.W.2d 627, 635 (Tex. Crim. App. 1984). Thus, no

rights were in jeopardy of being irretrievably lost if not asserted in the week between representation by counsel.

Accordingly, Mockabee's Sixth Amendment right to counsel was not violated, and his fourth issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed March 22, 2023
Do not publish
[CR25]

