**Opinion filed September 2, 2021**



### In The

# Eleventh Court of Appeals

_____

## No. 11-20-00144-CR

_____

### THE STATE OF TEXAS, Appellant

### V.

### BRANDON NICHOLAS MARTINEZ, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR26667**

### O P I N I O N

On June 25, 2018, after a traffic stop, Appellee, Brandon Nicholas Martinez, was arrested, and later indicted by a grand jury, for possession of a controlled substance, namely Tetrahydrocannabinol (THC), other than marihuana, in an amount of less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(a), (b) (West 2017). Appellee filed a motion to suppress and contended that the actions taken by law enforcement personnel in seizing THC from the vehicle that he had

operated on that date violated his Fourth Amendment rights. After a hearing and considering the evidence, the trial court granted Appellee's motion.

The State now appeals the trial court's grant of Appellee's motion to suppress evidence.[1] In two issues, the State asserts that the trial court erred when it (1) determined that "there were no separate articulable facts supporting reasonable suspicion or probable cause of any *other crime* apart from the traffic infraction" and (2) created a "per se" time limitation for the arrival of a canine unit and then ruled on this issue after it was raised for the first time by Appellee's trial counsel during his closing argument. For the reasons discussed below, we reverse and remand.

## I. *Factual Background*

On the day of Appellee's arrest, Officer Roberto Rodriguez, a four-year veteran of the Brownwood Police Department, observed Appellee driving a vehicle on Highway 377 in Brownwood. Officer Rodriguez was familiar with Appellee because he had, within the past year, arrested Appellee for possession of marihuana. Appellee pulled into a gas station, and Officer Rodriguez followed in his patrol unit. Appellee did not exit the vehicle that he was driving; rather, he left and drove to another gas station that was approximately one-half of a mile away. According to Officer Rodriguez, Appellee committed a traffic violation when he failed to signal his intention to turn at least one hundred feet before turning left onto the premises of the second gas station. *See* TEX. TRANSP. CODE ANN. § 545.104(b) (West 2011).

Upon observing Appellee's traffic violation, Officer Rodriguez activated his emergency overhead lights and initiated a traffic stop; the vehicle operated by Appellee eventually stopped at one of the fuel pumps, with the vehicle's fuel cap facing away from the pump. Appellee immediately exited the vehicle that he had been driving without being prompted to so do, which Officer Rodriguez testified

---

[1]In a criminal case, the State is entitled to appeal an order of a trial court if the order grants a motion to suppress evidence, the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay, and the suppressed evidence is of substantial importance in the case. TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5).

was a very unusual gesture given the circumstances. Officer Rodriguez then exited his patrol unit, approached Appellee, and introduced himself. Before Officer Rodriguez could explain the reason for the traffic stop, Appellee interrupted and thanked Officer Rodriguez for arresting him previously because, according to Appellee, the arrest had changed his life. Another Brownwood police officer, Officer Patrick Weaver, arrived shortly thereafter as backup to Officer Rodriguez. After Appellee had spoken to Officer Rodriguez for almost an entire minute, Officer Rodriguez explained the reason for the traffic stop to Appellee and asked Appellee to produce his driver's license, vehicle registration, and proof of insurance. As Appellee retrieved these items, he continued to speak about his previous arrest by Officer Rodriguez, how the arrest had affected his life, and the probation that he was still serving because of the arrest.

Meanwhile, Officer Rodriguez was informed by dispatch that the vehicle Appellee had been driving was registered to someone other than Appellee. When confronted with this information, Appellee claimed that he had purchased the vehicle several years prior but could not explain why it was still registered to someone else. After Officer Rodriguez told Appellee that he would only receive a warning, and not a traffic citation, Officer Rodriguez asked Appellee if he had anything illegal in the vehicle. Appellee stated that he did not. Officer Rodriguez then requested, and received, consent to search Appellee. Subsequent to the search of Appellee's person, Officer Rodriguez requested, and received, consent to search the vehicle that Appellee had been driving. However, immediately after consenting to the search of the vehicle, Appellee, who was now speaking to both Officer Weaver and Officer Rodriguez, stated that he believed that Officer Rodriguez had violated his rights and had intended to follow him from the first gas station to the second gas station. Officer Rodriguez then opened the vehicle's driver's side door, but, before proceeding further, he noticed that Appellee was still slightly agitated and was continuing to complain to Officer Weaver. Consequently, Officer Rodriguez

asked: "Do you want me to stop?" Appellee nodded and responded with a gesture that indicated to Officer Rodriguez that he should move away from the vehicle, which he immediately did.

Officer Rodriguez then asked Appellee if he would roll down one of the vehicle's windows. Appellee refused and predicted that, if he did roll down a window, Officer Rodriguez would have a canine called to the scene to "sniff" the vehicle and that Officer Rodriguez would then find a reason to search it. Based on the nature of his encounter with Appellee and the suspicions that he had developed, Officer Rodriguez called in a request for a canine unit. According to Officer Rodriguez's testimony and the reproduced copy of the dashcam video from his patrol unit that was admitted at the suppression hearing, no more than ten or eleven minutes had elapsed from the time that Officer Rodriguez initiated the traffic stop to the time that he requested a canine unit.

At the time, the closest available canine unit was in the neighboring town of Early. Thirty-eight minutes later, the canine unit from Early arrived, and the canine immediately proceeded to conduct an open-air sniff around the vehicle that Appellee had been driving. The canine alerted on the vehicle in less than one minute, and the officers thereafter searched the vehicle. During the search, Officer Rodriguez mirandized[2] Appellee and later asked him if there was any marihuana in the vehicle. Appellee stated that he had smoked marihuana in that vehicle for years, and that he was sure there were either trace amounts, resin, or a "roach" inside the vehicle. As a result of the search, THC was discovered in the vehicle by the officers.

## II. *Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

4

*Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673).

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In that context, we review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision, regardless of whether the trial court granted or denied the motion. *Wade*, 422 S.W.3d at 666 (citing *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). As such, we will sustain the trial court's ruling if it is supported by the record and if it is correct under any applicable legal theory. *Lerma*, 543 S.W.3d at 190.

5

### III. *Analysis*

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A warrantless traffic stop by law enforcement personnel to address traffic violations constitutes a seizure within the meaning of the Fourth Amendment and is tantamount to a temporary detention; therefore, the traffic stop must be justified and supported by reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see Derichsweiler*, 348 S.W.3d at 914 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

Reasonable suspicion for a detention exists if a law enforcement officer has specific, articulable facts, in light of his experience and personal knowledge, combined with rational inferences from those facts, that would lead the officer to reasonably conclude that the person detained has engaged in, is presently engaging in, or soon will engage in criminal activity. *Derichsweiler*, 348 S.W.3d at 914 (citing *Sokolow*, 490 U.S. at 7); *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010); *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). This is an objective standard that disregards the actual subjective intent of the detaining officer and focuses, instead, on whether there was an objectively justifiable basis for the detention. *Terry*, 392 U.S. at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011); *Derichsweiler*, 348 S.W.3d at 914. When we evaluate whether reasonable suspicion exists, we consider the totality of the circumstances from an objective standpoint and whether the totality of the objective information available to the detaining officer indicates that the officer had a particularized and objective basis to suspect wrongdoing. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Derichsweiler*, 348

S.W.3d at 914–916 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This consideration includes "both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990).

We may not use a "divide and conquer" approach, in which we disregard some individual circumstances as not being suspicious; instead, we must consider the cumulative force of all the circumstances. *Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). As such, whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

An officer need not develop a suspicion that a particular crime has been or will be committed; rather, he need only suspect that *something* "of an apparently criminal nature is brewing." *Derichsweiler*, 348 S.W.3d at 916–17 (citing *White*, 496 U.S. at 330). In other words, it is sufficient if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *Ramirez-Tamayo*, 537 S.W.3d at 36 (quoting *Arvizu*, 534 U.S. at 273); *see Terry*, 392 U.S. at 30. This requires that the information available to the officer supports more than a mere hunch or intuition. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Wade*, 422 S.W.3d at 668. The officer may then pursue multiple plausible theories in an attempt to resolve his suspicion. *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010) (citing *United States v. Brigham*, 382 F.3d 500, 509 (5th Cir. 2004)). Therefore, even when circumstances seem innocent in isolation, an investigative detention is justified if the circumstances combine to reasonably suggest that criminal conduct is afoot or imminent. *See Furr*, 499 S.W.3d at 880 n.8; *Murray*, 457 S.W.3d at 448; *see also Derichsweiler*, 348 S.W.3d at 917. Further, we may consider an officer's ability to "draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude

7

an untrained person." *Ramirez-Tamayo*, 537 S.W.3d at 36 (citing *Arvizu*, 534 U.S. at 273).

A. *The Traffic Stop*

In its first issue, the State argues that the trial court erred when it held that "there were no separate articulable facts supporting reasonable suspicion or probable cause of any *other crime* apart from the traffic infraction." Specifically, the State asserts that (1) Officer Rodriguez testified to a multitude of specific, articulable facts that supported his reasonable suspicion that *other criminal activity*, independent of Appellee's traffic violation, was occurring or had occurred and (2) the actions of Officer Rodriguez did not unduly prolong or delay the continuation of the traffic stop. We agree with the State.

At the outset we note that, in its Findings of Fact and Conclusions of Law, the trial court recited two findings of fact that should be designated as conclusions of law. In its Findings of Fact, the trial court found that:

> 12. Officer Rodriguez prolonged the traffic stop beyond the time needed to complete his traffic-based inquiries.[3]

> 13. There were no separate articulable facts supporting reasonable suspicion or probable cause of any other crime apart from the traffic infraction to allow the detention to continue after the conclusion of the traffic investigation.

These findings (whether reasonable suspicion of *other criminal activity* existed and whether the traffic stop was unduly prolonged or delayed) constitute legal conclusions. *See Lerma*, 543 S.W.3d at 192–94 (citing *Rodriguez v. United States*, 575 U.S. 348 (2015)); *Kothe*, 152 S.W.3d at 63. As we have said, in this context we review legal conclusions de novo. *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe*, 517 S.W.3d at 62–63.

---

[3]The exact sentence is also recited in the trial court's conclusions of law.

### 1. *Specific, Articulable Facts of Other Criminal Activity*

Officer Rodriguez testified at the suppression hearing and articulated an abundance of facts regarding his interaction with and observations of Appellee that, taken together, sufficiently establish reasonable suspicion that a separate crime, other than the traffic violation committed by Appellee that justified the traffic stop, had occurred or was occurring. Officer Rodriguez's articulated facts, although not exhaustive, included that: (1) Appellee had a recent criminal history—Officer Rodriguez knew Appellee and had previously arrested Appellee for other drug offenses; (2) Appellee drove away from the first gas station and drove directly to another, but parked the vehicle he had been driving next to a gas pump with the gas tank cap facing away from the pump; (3) when Officer Rodriguez's patrol unit stopped behind him, Appellee immediately exited the vehicle that he had been driving rather than waiting for Officer Rodriguez to approach—conduct that Officer Rodriguez stated was unusual and suspicious; (4) Appellee interrupted Officer Rodriguez's explanation of the basis for the traffic stop and began discussing a previous incident in which he had been arrested by Officer Rodriquez—Officer Rodriguez testified that, in his experience, this was a common deflection tactic; (5) Appellee was not the registered owner of the vehicle that he had been driving and could not explain the discrepancy; (6) Appellee's attitude toward Officer Rodriguez shifted dramatically after the arrival of other officers—from jovial and cooperative to agitated and accusatory; (7) Appellee withdrew his consent for Officer Rodriguez to search the vehicle that Appellee had been driving only after the arrival of the other officers; and (8) in response to Officer Rodriguez's request that Appellee roll down one of the vehicle's windows, Appellee stated that if he complied with Officer Rodriguez's request he predicted that Officer Rodriguez would call for a canine unit to sniff for drugs—an indicator to Officer Rodriguez that Appellee expected that something illegal would be discovered if he had consented to a search of the vehicle.

9

Here, the trial court concluded that there were no "separate," articulable facts expressed by Officer Rodriguez to support his stated reasonable suspicion of the occurrence of any *other crime*, independent of Appellee's traffic violation; therefore, the detention of Appellee should not have continued beyond the scope of the initial traffic investigation. Viewed in isolation, some of the above stated facts may arguably not support a finding of reasonable suspicion. Nevertheless, we must consider the cumulative force of all the circumstances in determining whether reasonable suspicion existed. *Furr*, 499 S.W.3d at 880 n.8 (citing *Murray*, 457 S.W.3d at 448); *see Wade*, 422 S.W.3d at 670.

The significance of the lions' share of the facts articulated by Officer Rodriguez is a question of law, rather than a mixed question of law and fact. For instance, the trial court found that Appellee did not exhibit any signs of extreme nervousness. Because this finding constitutes a mixed question of law and fact that turns on a determination of the witness's credibility and demeanor, we defer to the trial court's finding on this point.[4] *See Amador*, 221 S.W.3d at 673. However, the significance of other facts articulated by Officer Rodriguez—including (1) Appellee's recent criminal history involving narcotics (which Appellee repeatedly articulated), (2) the discrepancy of the ownership of the vehicle that Appellee had been driving, (3) Appellee's withdrawal of his consent to the vehicle search, and (4) Appellee's unsolicited prediction of the deployment of a canine and its purpose—are not questions upon which we owe deference to the trial court. *Lerma*, 543 S.W.3d at 190; *see Derichsweiler*, 348 S.W.3d at 913; *Amador*, 221 S.W.3d at 673; *see also United States v. Vazquez*, 555 F.3d 923, 929 (10th Cir. 2009) (holding that a discrepancy between the driver of a vehicle and the registered owner of the same vehicle establishes reasonable suspicion); *Wade*, 422 S.W.3d at 674–75

---

[4]Notably, although the State asserted that "nervousness" was a specific, articulable fact to support reasonable suspicion in its brief in opposition to Appellee's motion to suppress, it does not advance that argument on appeal.

(holding that even though a person's withdrawal of consent to a search cannot be the "prominent factor" in determining reasonable suspicion, it can be a factor in the determination when combined with other suspicious factors); *Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) (holding that a person's criminal history of recent offenses can establish reasonable suspicion when viewed together with other factors).

Based on the specific, articulated facts discussed above, and the relevant factors and circumstances in this case when considered cumulatively, Officer Rodriguez, in relying on his experience as a law enforcement officer, could reasonably have suspected that *other criminal activity*, independent of Appellee's observed traffic violation, had occurred or was afoot. As such, we hold that a sufficient and justifiable basis for reasonable suspicion existed for the officers to investigate Appellee for *other criminal activity*.

### 2. *Unduly or Unreasonably Delayed or Prolonged Detention?*

The State further asserts in its first issue that Officer Rodriguez's actions did not unduly delay or prolong the traffic stop. Whether a traffic stop was unduly delayed or prolonged by the actions of a law enforcement officer is a question of reasonableness that we review de novo. *Lerma*, 543 S.W.3d at 190, 194; *Kothe*, 152 S.W.3d at 62–63; *see also Sharpe*, 470 U.S. at 679.

A person may be detained upon reasonable suspicion that the person committed a traffic violation. *Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). Once initiated, a traffic stop (an investigative stop) may not last longer than "necessary to effectuate the purpose of the stop." *Lerma*, 543 S.W.3d at 193 (citing *Rodriguez*, 575 U.S. at 354); *see Sharpe*, 470 U.S. at 685. Therefore, after the reason for the traffic stop has been resolved, the stop may not then be used by law enforcement as a fishing expedition for unrelated criminal activity. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (citing *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsburg, J., concurring)).

11

In a traffic stop setting, in addition to determining whether to issue a traffic citation, while the investigation is ongoing a law enforcement officer may appropriately request and verify (1) the driver's license and proof of insurance, (2) the driver's destination and purpose of the trip, (3) the driver's history for outstanding warrants, and (4) the vehicle's ownership and registration. *Lerma*, 543 S.W.3d at 193 (citing *Rodriguez*, 575 U.S. at 355); *Kothe*, 152 S.W.3d at 63. Further, an officer may inquire into matters unrelated to the purpose of the traffic stop provided those inquiries do not unreasonably extend the duration of the stop. *See Kothe*, 152 S.W.3d at 64–65; *Parker v. State*, 297 S.W.3d 803, 812 (Tex. App.—Eastland 2009, pet. ref'd) (citing *Sharpe*, 470 U.S. at 686). Nevertheless, reasonable suspicion that *another offense* was or is being committed is required in order to delay or prolong the duration of the driver's initial detention. *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). As such, if during his investigation of the circumstances that precipitated the traffic stop the detaining officer develops reasonable suspicion that *other criminal activity* has occurred or is occurring, the scope of the initial investigation may expand to include the *other offense* and the officer may further detain the driver for a reasonable period of time in order to dispel or confirm the officer's reasonable suspicion of *other criminal activity*. *Lerma*, 543 S.W.3d at 191; *Smith v. State*, No. 02-15-00426-CR, 2017 WL 1289354, at *4 (Tex. App.—Fort Worth Apr. 6, 2017, pet. ref'd) (mem. op., not designated for publication).

For purposes of our review, we have outlined above what is pertinent to our disposition of the State's first issue on appeal. As relevant to the traffic stop, the trial court found that the officers' investigation of Appellee's traffic violation had concluded when Officer Rodriguez stated—at approximately 15:54:53 of the video timestamp—that Appellee would only receive a warning for the observed traffic

offense.[5] Importantly, the duration of the traffic stop's initial purpose lasted no more than six or seven minutes in its entirety. Furthermore, several minutes of the stop's duration were consumed by Appellee's ongoing discussion of his previous encounter with Officer Rodriguez that had resulted in his arrest for drug possession. In light of all of the circumstances, when considered collectively, the manner in which Officer Rodriguez conducted the investigation of Appellee's traffic violation was efficient and appropriate and did not unreasonably or unduly delay or prolong the traffic stop. The trial court erred in finding otherwise. Therefore, we hold that: (1) Officer Rodriguez developed reasonable suspicion that *other criminal activity*, independent of the purpose of the traffic stop, was afoot or had occurred; (2) because of Officer Rodriguez's reasonable suspicion, the continued detention of Appellee was justified; and (3) Officer Rodriguez's actions or conduct did not unreasonably or unduly delay or prolong the extended duration of the traffic stop. Accordingly, we sustain the State's first issue on appeal.

B. *Per Se Time Limit for the Arrival of the Canine Unit*

We turn now to the State's second issue, which is two-fold, that the trial court erred when it (1) created a "per se" time limitation for the arrival of a canine unit and (2) thereafter ruled on this issue after it was first raised by Appellee's trial counsel in his closing argument.[6] In its Findings of Fact and Conclusions of Law, the trial court concluded that the duration from when the traffic stop had ended until

---

[5]This opinion addresses the State's issues and sub-issues as presented in its brief. However, the question of whether Appellee's entire detention was justified turns on whether reasonable suspicion existed to allow Officer Rodriguez to detain Appellee in order to investigate suspected criminal activity that occurred outside the scope of the traffic violation for which Appellee was initially stopped. *See Lerma*, 543 S.W.3d at 193 (citing *Rodriguez*, 575 U.S. at 354); *see also Sharpe*, 470 U.S. at 679. The question does not turn on whether Officer Rodriguez investigated the *other, suspected, criminal activity* during or after the purpose of the traffic stop was completed. *See Lerma*, 543 S.W.3d at 194; *Kothe*, 152 S.W.3d at 58, 63; *see also Rodriguez*, 575 U.S. at 354.

[6]Although the State complains that this issue was first raised during the closing argument presented by Appellee's trial counsel, we note that the issue was first addressed by the State in its closing argument. Further, because the timing of the canine unit's arrival is related to the overall question of the reasonableness of Appellee's detention, we will address this issue on the merits.

the canine unit arrived at the scene was "per se" unreasonable and constituted an illegal detention under the Fourth Amendment. We disagree.

As we have said, once a detention is extended beyond the purpose of the initial traffic stop, a law enforcement officer must have reasonable suspicion that illegal activity, such as the presence of narcotics in the vehicle that has been stopped, is imminent or afoot in order to justify the continuation of the detention. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005); *see Lerma*, 543 S.W.3d at 193 (citing *Rodriguez*, 575 U.S. at 354). Here, thirty-eight minutes elapsed from when the initial purpose of the traffic stop had concluded until the canine unit arrived at the scene. Appellee suggests that such a delay constitutes an unreasonable detention. Indeed, there is no rigid time frame or bright-line rule that governs the acceptable duration of a temporary detention. *See Sharpe*, 470 U.S. at 685–86 (expressly rejecting the adoption of a "hard-and-fast" time limitation for permissible traffic stops). In fact, no requirement exists that a canine unit must arrive at the location of the traffic stop within a certain period of time; it is only necessary that the timing of the canine unit's arrival is not unreasonable under the circumstances. *Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd). Based on the circumstances presented in this case, we cannot say that a thirty-eight-minute detention to await the arrival of a canine unit is unreasonable "per se." *See, e.g.*, *Matthews v. State*, 431 S.W.3d 596, 605–06 n.36 (Tex. Crim. App. 2014); *Parker*, 297 S.W.3d at 812 (holding that a seventy-minute detention following a traffic stop until the canine alerted on the defendant's vehicle is not unreasonable per se); *Strauss*, 121 S.W.3d at 492 (holding that a seventy-five-minute detention from the traffic stop until the arrival of canine unit is not unreasonable); *Josey v. State*, 981 S.W.2d 831, 840–41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that a ninety-minute detention from the time of the stop until the officers searched the vehicle was not unreasonable).

14

The reasonableness of the duration of Appellee's extended detention depends on whether Officer Rodriguez diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. *See Sharpe*, 470 U.S. at 686; *Parker*, 297 S.W.3d at 812. Therefore, a temporary detention may continue for a reasonable period of time until the officer either confirms or dispels his original suspicion that criminal activity is afoot. *Matthews*, 431 S.W.3d at 603.

Generally, an open-air sniff of a vehicle's exterior by a trained canine is not a search within the meaning of the Fourth Amendment. *Johnson v. State*, 323 S.W.3d 561, 563–64 (Tex. App.—Eastland 2010, pet. ref'd); *1979 Pontiac Auto. v. State*, 988 S.W.2d 241, 243 (Tex. App.—Eastland 1998, no pet.); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). This is because the use of a trained canine unit is recognized as a minimally intrusive method of investigation for a law enforcement officer to either confirm or dispel his suspicions of the presence of narcotics. *Parker*, 297 S.W.3d at 812; *see Strauss*, 121 S.W.3d at 492, *Josey*, 981 S.W.2d at 841. Consequently, if an officer temporarily detains "an automobile to allow an olfactory inspection by a police dog trained to detect the odor of illegal drugs," that detention "is not offensive to the Fourth Amendment when based on a reasonable suspicion that the automobile contains narcotics." *Mohmed*, 977 S.W.2d at 628. However, reasonable suspicion is required to prolong a detention so that a canine sniff can occur. *Kothe¸*152 S.W.3d at 63–64; *see Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd). Nevertheless, a canine sniff that results from an unreasonably prolonged traffic stop is invalid under the Fourth Amendment. *See Haas*, 172 S.W.3d at 52.

We have already discussed the facts articulated by Officer Rodriguez that support his reasonable suspicion that *other criminal activity*, independent of the purpose of the traffic stop, was occurring or had occurred, including Appellee's recent criminal history that involved the possession of narcotics and the unexplained discrepancy of the ownership of the vehicle that he had been driving. Importantly,

those facts existed, or were discovered, either prior to or during the duration of the initial traffic stop and Officer Rodriguez's initial investigation—thus, reasonable suspicion had been developed and existed during the officers' initial traffic stop investigation. Moreover, based on that reasonable suspicion, Officer Rodriguez was justified in requesting the assistance of a canine unit and extending the duration of Appellee's detention in light of Appellee's (1) "about face" refusal to consent to a search of the vehicle that he had been driving, which occurred only seventeen seconds after the initial traffic stop investigation had concluded, and (2) reaction to Officer Rodriguez's suggestion that, in lieu of a search, Appellee roll down one of the vehicle's windows (including Appellee's stated prediction that if he complied with Officer Rodriguez's request a canine would then be summoned to "sniff" the vehicle he had been driving, giving Officer Rodriguez a reason to search it).

Appellee cites to *Rodriguez v. United States*, *State v. Tucker*, and *Richardson v. State* in support of his contention that Officer Rodriguez did not have reasonable suspicion to extend the duration of Appellee's detention until the canine unit arrived in order to investigate Officer Rodriguez's suspicions of *other criminal activity*. *See Rodriguez*, 575 U.S. 348; *State v. Tucker*, No. 13-15-00491-CR, 2016 WL 2609310 (Tex. App.—Corpus Christi-Edinburg, May 5, 2016, pet. ref'd) (mem. op., not designated for publication); *Richardson v. State*, 494 S.W.3d 302 (Tex. App.—Waco 2015, no pet.). Each case relied on by Appellee is distinguishable.

Although the facts in *Rodriguez* are similar to facts in this case, the Supreme Court's holding turned on the question of whether law enforcement's extension of a traffic stop in order to conduct a canine sniff violated the Fourth Amendment *absent* reasonable suspicion. *See Rodriguez*, 575 U.S. at 356–58. As such, the Court did not address whether reasonable suspicion existed based on the facts of that case. *Id.*

In *Tucker*, the Corpus Christi–Edinburg Court of Appeals affirmed the grant of defendant's motion to suppress because the facts articulated by law

enforcement—that the defendant's vehicle stopped briefly in front of a known "drug house," that the defendant did not immediately pull his vehicle over when the officer activated his emergency lights, that the defendant appeared slightly nervous, and that the defendant's explanation that he was at the house to pick up an acquaintance—were mixed questions of law and fact that turned on a determination of witness credibility and demeanor and thus required deference to the trial court's findings. *Tucker*, 2016 WL 2609310, at \*6–8 (citing *Amador*, 221 S.W.3d at 673). Nevertheless, and as we have explained, not all of the facts in the case before us require deference to the trial court's rulings. Furthermore, we have held that the facts in this case clearly support Officer Rodriguez's reasonable suspicion of *other criminal activity*.

Finally, in *Richardson*, the Waco Court of Appeals reversed the denial of a motion to suppress because the facts articulated by law enforcement as the basis for extending the defendant's detention in order to deploy a canine unit were either unreliable or obtained *after* the traffic stop had concluded. *Richardson*, 494 S.W.3d at 305–06. Conversely, in this case, Officer Rodriguez knew of or had observed specific facts, which we have outlined above, *before* the purpose of the traffic stop had concluded, and those facts justified his extension of Appellee's detention.

Here, when viewed collectively, the circumstances known to Officer Rodriguez provided reasonable suspicion that justified the thirty-eight-minute wait for the canine unit to arrive at the scene. Pursuant to Officer Rodriguez's request, Appellee consented to a search of his person and, at first, the vehicle that he had been driving. However, he quickly withdrew his consent to the search of the vehicle when Officer Rodriguez opened the driver's door to that vehicle. Officer Rodriguez immediately terminated the vehicle search and then asked Appellee if he would roll down one of the vehicle's windows. Appellee's response to this request was to predict that, if he were to roll down any window, Officer Rodriguez would then summon a canine unit and find a reason to search the vehicle. Appellee's unsolicited

17

commentary, in addition to the facts already known to Officer Rodriguez, was sufficient to justify the further detention of Appellee until a canine unit arrived. According to Officer Rodriguez, although he called for and requested a canine unit, the closest available canine unit was stationed in the rural neighboring town of Early. The canine unit arrived at the scene thirty-eight minutes later. After its arrival the canine quickly alerted (in less than a minute) on the vehicle that Appellee had been driving and confirmed Officer Rodriguez's suspicions. Once the canine alerted, Officer Rodriguez's reasonable suspicion ripened into probable cause to search the vehicle. *See State v. Weaver*, 349 S.W.3d 521, 527–28 (Tex. Crim. App. 2011) (recognizing that a positive alert by a trained canine provides probable cause to search a vehicle); *Parker v. State*, 182 S.W.3d 923, 924 (Tex. Crim. App. 2006); *Branch v. State*, 335 S.W.3d 893, 901 (Tex. App.—Austin 2011, pet. ref'd); *Parker*, 297 S.W.3d at 812.

Smaller and more rural law enforcement departments often lack the resources that larger, more urban departments might possess; therefore, the sharing of specialized departmental resources (such as canine units) can be a reasonable and necessary component of a rural law enforcement officer's ability to perform his duties and investigations. *See, e.g.*, *Parker*, 297 S.W.3d at 812 (holding that a detention prolonged by over an hour to await the arrival of a canine unit that was located thirty or forty minutes away was reasonable). In this instance, we conclude that Officer Rodriguez diligently pursued a means of investigation that was likely to confirm or dispel his suspicions quickly. It is undisputed that Officer Rodriguez immediately requested the presence of a canine unit once it became apparent to him that a canine sniff would be necessary to dispel or confirm his suspicion that Appellee had been, or was engaged in, *other criminal activity*, namely, the possession of drugs in the vehicle he had been driving. Therefore, the thirty-eight-minute duration of Appellee's further detention until the canine unit arrived at the scene was reasonable and not violative of Appellee's Fourth Amendment rights. *See*

18

*id.* (citing *Love v. State*, 252 S.W.3d 684, 688 (Tex. App.—Texarkana 2008, pet. ref'd)); *see also Lerma*, 543 S.W.3d at 194–95.

We hold that the trial court erred when it concluded that the continued detention of Appellee until the canine unit arrived at the scene was "per se" unreasonable. The specific facts articulated by Officer Rodriguez established the existence of an objectively reasonable, articulable suspicion of *other criminal activity* that was beyond the scope of Appellee's traffic violation, which in turn justified the extended detention of Appellee and the vehicle he had been driving pending the arrival of the canine unit. As such, the thirty-eight-minute time period by which the duration of Appellee's detention was extended was reasonable under the circumstances. Accordingly, we sustain the State's second issue on appeal to the extent that it complains of the trial court's determination that the continued detention of Appellee until the canine unit arrived at the scene was "per se" unreasonable. In light of our holding, we need not address the State's sub-complaint regarding the timeliness of the trial court's ruling on this issue. *See* TEX. R. APP. P. 47.1.

IV. *This Court's Ruling*

We reverse the trial court's order granting Appellee's motion to suppress and remand this cause to the trial court for further proceedings consistent with this opinion.

W. STACY TROTTER
JUSTICE

September 2, 2021

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

19